UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

              - against -

HOWARD THOMAS PORTER

              Defendant.
-----------------------------------------------------------X
HOWARD THOMAS PORTER,

              - against -

UNITED STATES OF AMERICA

              Respondent.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

03 CR 0129 (RJD)
09 CV 2142 (RJD)

Andrea G. Hirsch, Esq. has filed two applications seeking reimbursement of attorney's fees in the amount of $35,657.00 and $13,113.50 respectively, pursuant to Section 2.22(C)(2) of the Criminal Justice Act ("CJA" or the "Act") for services rendered in connection with her representation of defendant Howard Thomas Porter. Specifically, Ms. Hirsch seeks compensation for the time and cost of her services from June 2008 through January 2010, though her representation of Mr. Porter predates this period. Since the amounts exceed the combined statutory maximums of $9,700 for a post-conviction proceeding under 28 U.S.C. § 2255 and $1,700 for representation during a supervised release hearing, the court must determine whether the applications should nonetheless be granted under 18 U.S.C. § 3006A(d)(3), which permits fees in excess of the statutory maximum where the case involved "extended or complex representation."

Ms. Hirsch's requests for payment were referred to the undersigned by the Honorable

Chief Judge Raymond J. Dearie to prepare a Report and Recommendation on two issues: (1) whether the matters were complex or extended; and (2) whether the total amount sought is appropriate in order "to provide fair compensation" to Ms. Hirsch within the meaning of the CJA.

Having thoroughly reviewed the record in this case, it is respectfully recommended Ms. Hirsch's applications for fees be granted in the amount of $28,407.00.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Ms. Hirsch, a member of the Second Circuit CJA panel, was appointed to represent Howard Porter in his 2004 appeal after a conviction for possession and distribution of child pornography. The Honorable Charles P. Sifton subsequently appointed Ms. Hirsch to represent Mr. Porter in connection with his motion for bail pending that appeal in 2004. (Hirsch Let.[1] at 1).

On October 24, 2007, Mr. Porter was charged with failing to follow the rules of the Residential Re-Entry Center to which he had been assigned, including failing to report for sex offender treatment, and was sentenced to serve a four-month prison sentence for violating the terms of his supervised release. Porter v. United States, No. 09 CV 2142, 2009 WL 2762818, at *5 (E.D.N.Y. Aug. 27, 2009). In February 2008, Mr. Porter was once again released from prison to further supervision.

In August 2008, Mr. Porter's therapist, a psychologist at the New York Center for

---

[1] Citations to "Hirsch Let." refer to the April 5, 2010 letter from Ms. Hirsch to Judge Dearie.

Neuropsychology and Forensic Behavioral Science ("New York Forensic"), expelled the defendant from the treatment program to which he had been assigned, finding that he had violated two of the conditions of supervised release: (1) he failed to participate in a meaningful way in sex-offender treatment; and (2) he committed another crime.[2] At the time of his second alleged violation of supervised release, Judge Sifton once again appointed Ms. Hirsch to represent Mr. Porter.

Ms. Hirsch's current applications for reimbursement of fees relate exclusively to her representation of Mr. Porter following the second violation of supervised release. Since May of 2008, the date of the first entry on her voucher, Ms. Hirsch's work has focused primarily on Mr. Porter's supervised release experience and the alleged inadequacies of the program to which he was assigned.

1) <u>Work in Connection with the Second Violation of Supervised Release</u>

Primarily an appellate attorney with minimal trial experience, Ms. Hirsch asked Judge Sifton to appoint a separate trial lawyer from the CJA panel to represent Mr. Porter during the hearing on his alleged violation of supervised release. After her request for a separate trial lawyer was denied, Ms. Hirsch served as counsel for Mr. Porter on the violation charges. (Hirsch

---

[2] It was alleged that Mr. Porter had violated a Florida order of protection requiring that he refrain from contact with his ex-wife and he was charged with criminal contempt in violation of New York Penal Laws. The court eventually concluded that Mr. Porter was not guilty on this second charge. See Porter v. United States, No. 09 CV 2142, 2009 WL 2762818, at *8, (E.D.N.Y. Aug. 27, 2009).

Let. 2[3] at 1). At the conclusion of the violation hearing, Judge Sifton sentenced Porter to nine months imprisonment. (Hirsch Let. at 4).

Ms. Hirsch subsequently filed a motion for a stay based on the argument that, among other things, the denial of trial counsel for the hearing on the violation of supervised release was inconsistent with the Second Circuit's Amended CJA Plan (the "Plan"). Ms. Hirsch argued that the Plan provided for the appointment of trial level lawyers on remand when appellate counsel limits his or her practice to appellate work. (Hirsch Let. at 5).

In connection with the motion for a stay, Ms. Hirsch consulted Dr. Eric Goldsmith and asked for an evaluation of Porter on March 6, 2009. Dr. Goldsmith disagreed with the court's finding that "Porter's resistance to treatment is volitional." (Goldsmith Decl.[4] at 2). At the same time, Ms. Hirsch indicates that she was "dissatisfied with what Dr. Goldsmith had to say" since she believed his report lacked the specificity and detail required to convince the Court of Appeals that Porter's treatment and discharge from supervision were improper. At that time, Ms. Hirsch began doing her own independent "extensive research on sex-offender treatment" in an effort to show that proper trial level counsel could have demonstrated that New York Forensic's services were not on par with professional standards. (Hirsch Let. at 6). Ms. Hirsch admits that a further reason for spending time on such research was an attempt to have a general "impact on the District Court's and Probation's reliance on New York Forensic" due to her belief that the treatment program is "flawed in many respects" and that "defendants are not getting treatment

---

[3] Citations to "Hirsch Let. 2" refer to the November 13, 2008 letter from Ms. Hirsch requesting appointment of a trial lawyer for the supervised release hearing.

[4] Citations to "Goldsmith Decl." refer to the Declaration of Dr. Eric Goldsmith, signed on March 11, 2009.

that might help them." (Id.) She further believed that some defendants were "being punished for not complying with treatment that is ill-thought or inappropriate." (Id.)

After spending many hours conducting a great deal of research, Ms. Hirsch discovered a 2003 pre-trial evaluation of Porter prepared by Dr. Richard Krueger, who had been appointed to the case early on by Judge Sifton. At counsel's request, Dr. Krueger met with Porter on May 1, 2009 and concurred with Ms. Hirsch's view, finding that the treatment provided by New York Forensic did not meet professional standards. (Hirsch Decl.[5] ¶ 13). Such a determination by an expert witness was vital to Porter's case.[6]

Ms. Hirsch realized at some point that her motion to stay was better characterized as a petition to vacate judgment under 28 U.S.C. § 2255, and Judge Sifton consented to her appointment *nunc pro tunc* to prepare the writ petition. Judge Sifton thereafter denied Porter's petition to vacate judgment on August 28, 2009. See Porter v. United States, No. 09 CV 2142, 2009 WL 2762818, at *6, (E.D.N.Y. Aug. 27, 2009). In his opinion, the Judge notes that the therapist who treated Mr. Porter from New York Forensic ultimately concluded that Mr. Porter had failed to accept "responsibility for the offending behavior" and did not gain "insight and understanding into the factors that brought about the offending behavior." Id. at *6. He also cited the therapist's testimony that Mr. Porter had been "treatment-resistant for six months," an unusually long period. Id. In denying the petition, the court found that "regardless of the [treatment] program's alleged shortcomings, the defendant was still obligated to participate in a

---

[5] Citations to "Hirsch Decl." refer to the Declaration of Andrea Hirsch, dated July 15, 2010.

[6] The issue of compensation of these expert witnesses is not currently at issue before the Court.

meaningful manner. Even if defense counsel had persuasively established that the treatment program was flawed, the appropriate remedy would have been for the defendant to comply to the best of his ability...." Id. at *12.

2) The Vouchers

In this application, counsel seeks a total of $48,770.50 in attorney's fees based on 456.1 collective hours of time spent in court, in interviews, conferences, document review, legal research, investigative and other time.[7] Ms. Hirsch's work in connection with the second violation of supervised release in 2008 is reflected in the first voucher bearing docket No. 03 CR 0129. Her work on this voucher spans from May 27, 2008 to December 10, 2009, encompasses 336.9 hours, and totals $35,657.00. Her work on the motion to vacate the sentence under 28 U.S.C. § 2255 is reflected in both the first and second vouchers. The second voucher, bearing docket number 09 CV 2142, covers her representation of Mr. Porter from March 22, 2009 to January 6, 2010, encompasses 119.2 hours, and totals $13,113.50 in attorney's fees.

Based on a review of the supporting time sheets submitted with counsel's vouchers, when combining the two vouchers, the total amount of time breaks down as follows: 15 hours in court, 60.1 hours conducting interviews and in conferences, 10.9 hours obtaining and reviewing records, 277.3 hours performing legal research and brief writing, and 92.8 hours on investigative

---

[7]These fees were calculated using the rate of $100/hour for the hours worked from January 1, 2008 through March 10, 2009, $110/hour for the hours worked from March 11, 2009 through December 31, 2009, and $125/hour for the hours worked from January 1, 2010 to the present. Guide to Judiciary Policy, Vol. 7A, Ch. 2, § 230.16, available at: http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Viewer.aspx?doc=/uscourts/FederalCourts/AppointmentOfCounsel/vol7/Vol07A-Ch02.pdf

and other work. (EDNY Summary of Claims for Payments under the CJA Act for Case No. 03 CR 0129; EDNY Summary of Claims for Payments under the CJA Act for Case No. 09 CV 2142). In addition, Ms. Hirsch seeks reimbursement for $1,847.67 in expenses, including collect phone calls from her client, Westlaw services, copying charges, UPS orders, book purchases and library charges for law review articles. (Id.)

## DISCUSSION

### A. Standards For An Award Above the Statutory Maximum

The purpose of the CJA is to help protect the rights of indigent defendants by ensuring that they are provided adequate legal representation. 18 U.S.C. § 3006A(a); United States v. Calle, 178 F. Supp. 2d 309, 310 (E.D.N.Y. 2001) (citing United States v. Tutino, 419 F. Supp. 246, 248 (S.D.N.Y. 1976)). Thus, the CJA provides legal fees to attorneys appointed pursuant to the Act, in order to alleviate the burden of representing indigent defendants. See United States v. Calle, 178 F. Supp. 2d at 310 (citing United States v. Perry, 471 F.2d 1069, 1070 (D.C. Cir. 1972)).

The CJA imposes certain maximum amounts of compensation for specific tasks. See 18 U.S.C. § 3006A(d)(2). The CJA also allows the Judicial Conference of the United States to set rules and regulations for the administration of CJA plans, and these regulations include the setting of maximum compensation. See 18 U.S.C. § 3006A(d)(1) & (2). The maximum set by the Judicial Conference in their "Guidelines to Administering the CJA and Related Statutes" for

"[o]ther representation required or authorized by the CJA (including . . . supervised release hearing)" is $1,700 for services completed between October 13, 2008, and March 11, 2009. Guide to Judiciary Policy, Vol. 7A, Ch. 2, § 230.23.20. In this case, the supervised release hearing was held on December 1, 2008, and Ms. Hirsch completed her work relating to the violation of supervised release on February 6, 2009. (Hirsch Decl. ¶ 18).

In addition, the Judicial Conference imposes a maximum amount of compensation for representation on post-conviction proceedings under 28 U.S. C. § 2255, which would apply to the time Ms. Hirsch spent in connection with the motion to vacate. Under the regulations set forth by the Conference, the maximum award is $9,700 for work completed after January 1, 2010. Guide to Judiciary Policy, Vol. 7A, Ch. 2, § 230.23.20. Ms. Hirsch's vouchers indicate that her work in connection with Porter's § 2255 petition was performed between February 6, 2009 and January 6, 2010.

In sum, the CJA authorizes payments of $1,700 for work relating to the supervised release hearing and $9,700 for work relating to the post-conviction proceedings under § 2255, for a combined maximum compensation of $11,400. Ms. Hirsch has requested a total of $48,770.50, well in excess of the total maximum compensation; such excess compensation requires court authorization.[8]

The Court may authorize payment in excess of these maximum amounts if: (1) the representation was extended or complex; (2) the Court certifies that the amount of the excess payment is necessary to provide fair compensation; and (3) the Chief Judge of the Circuit

---

[8]The Court expressed concern regarding the amount of attorney's fees requested and invited Ms. Hirsch to explicate and elaborate on the information submitted in her vouchers. She did so both *in camera* and by declaration submitted July 15, 2010.

approves it. 18 U.S.C. § 3006A(d)(3).

When applying for reimbursement above the statutory maximum, "CJA counsel must 'submit a detailed memorandum supporting and justifying counsel's claim that the representation given was in an extended or complex case, and that the excess payment is necessary to provide fair compensation.'" United States v. Mukhtaar, No. 06 CR 31, 2008 WL 2151798, at *1 (S.D.N.Y. May 21, 2008) (citing Revised Plan Part IX.A.2). In response to such a request, courts have interpreted the CJA to require a two-step inquiry. Id. at 2. First, the Court must determine whether the representation is extended *or* complex. Second, the Court must determine whether the fees are necessary to provide fair compensation. Id. See also United States v. Bailey, 581 F.2d 984, 989 (D.C. Cir. 1978) ("[E]xcess compensation is to be allowed if, but only if, the legal or factual problems in the case, or the quantity or nature of the service demanded, are 'significantly' greater than average. The point of reference is the case commonly encountered, and the comparison must reveal enough margin of difference to justify a confident conclusion that excess compensation is essential to fairness"). Under the CJA, "fair compensation is often found to mean less than the amount requested." United States v. Mukhtaar, 2008 WL 2151798, at *4 (citing United States v. Blanford, 30 F. Supp. 1080, 1082 (C. D. Ill. 1998)).

"The certification process 'is not one involving a rubber stamp. It is a meaningful, congressionally-mandated step that requires detailed justification not only by the lawyer, but also by the approving judge.'" Id. at 2 (citing United States v. Sepulveda, 502 F. Supp. 2d 1104, 1105 (D. Mont. 2007) (internal citations omitted)). The Court, when calculating the appropriate compensation, must balance the competing policy goals underlying the CJA. Id. On the one hand, representing indigent defendants is a public service, and so "the [CJA] was never intended

9

to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice." Id. (citing United States v. Blanford, 30 F. Supp. at 1081 (internal citations omitted)). On the other hand, the CJA was intended to provide indigent defendants with meaningful representation, which could be undermined by too narrow a construction of the excess compensation provision. Id. (citing United States v. Keeble, No. 03 CR 399, 2008 WL 1792935, at *2 (N. D. Tex. Apr. 16, 2008) and United States v. Bailey, 581 F.2d at 989).

B. Analysis

Ms. Hirsch provides several justifications for spending such a lengthy amount of time on Mr. Porter's case. She argues that: (1) she felt "that the sentence was completely unjust, in that [Porter]. . . was essentially being imprisoned for being resistant to therapy;" (2) she was concerned that Porter's imprisonment for nine months would result in his losing a job that he worked "tremendously hard" to get and "was key to his well-being;" (3) she believed that the issues raised in her stay motion were "novel" and "unusual;" (4) she felt that her work might have "some farther reaching consequences than in just Mr. Porter's case" and "hoped that [her]. . . work and Dr. Krueger's evaluation might shed light on some of the problems with the sex-offender treatment program" in question; and she contends that the "novel" and "unusual" issues raised by Mr. Porter's case were "complex" as well as "extended" as defined by ¶ 2.22B(3) of the CJA Plan. (Hirsch Decl. ¶¶ 14- 18).

While Ms. Hirsch's first, second, and fourth justifications for spending extended time on this case are admirable and sincere, the narrow question before this Court is whether Mr. Porter's case should be considered "complex" or "extended."

1) <u>Whether the case was extended</u>

Turning to the two-part analysis, counsel's assertion that the case was "extended" is inconsistent with the law. According to the D.C. Circuit Court of Appeals, extended representation requires a "substantial investment of time;" however, the time included in the calculation should be restricted to "reasonably competent and productive effort" and should exclude "wasteful activity." United States v. Bailey, 581 F.2d at 987. A number of factors are considered when determining whether a case should be considered extended: "the duration of the representation, the quantity and nature of the charged offenses, whether the case proceeded to trial, and whether the attorney faced any other significant challenges during the course of the representation." United States v. Mukhtaar, 2008 WL 2151798, at *3.

In this case, a substantial portion of Ms. Hirsch's representation occurred from May 2008 to August 2009, when Judge Sifton issued his opinion denying the motion to vacate Mr. Porter's sentence. Although Mr. Porter was only charged with a violation of supervised release based on his failure to comply with treatment protocols, a relatively minor charge, the hearing on whether Mr. Porter violated the conditions of supervised release required the testimony of three major witnesses, Mr. Porter, his probation officer, Erin Weinrauch, and his therapist at New York Forensic, Karen Long. See Porter v. United States, No. 09 CV 2142, 2009 WL 2762818, at *6-8 (E.D.N.Y. Aug. 27, 2009). In addition, Ms. Hirsch spent a significant portion of her time after the hearing briefing the questions of whether the treatment protocols were appropriate and whether the sentence imposed was fair under the circumstances.

Although Ms. Hirsch contends that her lack of experience in trial matters and Judge Sifton's refusal to appoint trial counsel may have required her to spend more time on the matter than would be necessary, a review of the billing records indicates that the bulk of time expended was in connection with her post-hearing research and investigation into the propriety of Mr. Porter's treatment by New York Forensic. Based on the hour sheets and declaration submitted by Ms. Hirsch, approximately 34.6 hours of the time for which she seeks compensation was spent in status conferences and meeting with Mr. Porter's probation officer. The remaining 100.3 hours were spent in Ms. Hirsch's efforts to defend Mr. Porter during the hearing on his violation of supervised release. Of that time, approximately 38 hours were spent researching sex-offender treatment and writing post-hearing papers. Apart from the time spent in this pursuit, there were no other extenuating or significant challenges that would render this case "extended."

Furthermore, it appears that Ms. Hirsch did not necessarily make the best use of her time in researching the history of such treatment programs and attempting to show that the New York Forensic program was deficient. In the end, Judge Sifton was unpersuaded by these arguments, finding that Mr. Porter was required to comply with the terms of his supervised release to the best of his ability. Porter v. United States, 2009 WL 2762818, at *12. Indeed, the district judge found that Mr. Porter had not complied to the best of his ability, and therefore had violated the conditions of his supervised release. Id. Specifically, the judge found that "Mr. Porter was repeatedly confronted about his failure to participate in a meaningful manner by both his therapist and his probation officer, but that Mr. Porter appeared to ignore this feedback and frequently stated that he believed he was participating appropriately just by attending the treatment sessions." Id. at 6. Mr. Porter's therapist also testified that Mr. Porter was disruptive

12

during group sessions and disregarded homework assignments. Id. at 7.

While the Court does not question that Ms. Hirsch expended numerous hours in pursuit of Porter's case, the Court respectfully recommends that Porter's case should not be characterized as "extended" when compared with the sort of cases that have been deemed as such. See, e.g., United States v. Keeble, 03 CR 399-D, 2008 WL 1792935, at *1 (N.D. Tex. Apr. 16, 2008) (finding the representation was extended where defendant was charged with threatening to use a weapon of mass destruction and mailing a threatening communication, and it took 2.5 years to determine defendant's competency to stand trial); United States v. Vead, 03 CR 422-D(01), 2005 WL 1025798, at *2 (N.D.Tex. Apr. 29, 2005) (finding extended representation where defendant was charged in 16-count superseding indictment with conspiracy and mail fraud that occurred over a three-year period and defense counsel spent substantial amounts of time preparing defenses of diminished mental capacity, coercion, and duress); United States v. Ellzey, 29 F. Supp. 2d 505, 506-07 (C.D. Ill. 1998) (finding representation was extended where defendant was charged with being a member of cocaine conspiracy which spanned several years and included over thirty participants, resulting in a 5-day jury trial).

2) Whether the case was complex

Given the determination that the case was not "extended," the Court must still determine whether counsel should receive fees above the statutory maximum because the case was complex. See United States v. Mukhtaar, 2008 WL 2151798, at *2 (citing United States v. Bailey, 581 F.2d at 987 (holding that in evaluating a request for compensation in excess of the statutory maximum, "the representation may be either 'extended or complex;' it need not be

13

both")).

Courts have found that one of the following factors must be present in order to merit a finding of "complex" under the CJA statute: there must be "unusual or difficult legal or factual issues, multi-count indictments, voluminous evidence, and other circumstances, such as numerous or complex defenses, that require a greater than average amount of time or skill in preparing the defense." Keating v. New York, No. 03 CV 1286, 2009 WL 3401756, at *3 (E.D.N.Y. Oct. 21, 2009).

Despite Judge Sifton's denial of Porter's motion based on the challenge to the New York Forensic program, there were aspects of this case that could be considered complex. A challenge to the sufficiency and adequacy of a sex offender's treatment program was relatively novel and required a great deal of legal and factual research and investigation. While the challenge may not have succeeded, counsel was able to garner expert support for her theory from Dr. Krueger. Through his review of the program and counsel's "skillful advocacy," they were able to mount a colorable argument for the defense. See Porter v. United States, 2009 WL 2762818, at *10. Furthermore, a greater than average amount of skill may have been required to prepare the defense since Ms. Hirsch did not have much experience as trial counsel. Therefore, the Court recommends that Porter's case be deemed to be complex for purposes of awarding greater compensation than allowed by the statutory cap.

### 3) Reasonable compensation

Given the finding that Porter's case was complex, the Court must determine a reasonable amount of compensation. In determining what amount to award as "fair compensation," courts

have considered the factors in the Guidelines for the Administration of the Criminal Justice Act, which include: "[the] responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee." United States v. Mukhtaar, 2008 WL 2151798, at *5 (citing Admin. Office of U.S. Courts, Guide to Judiciary Policies and Procedures, § 2.22(3)).

In examining these factors, the Court notes that Porter faced only nine months in prison for the violation of supervised release. Similarly, there does not appear to be any extraordinary time pressure placed on counsel in preparing her papers, nor has counsel provided any information regarding the nature of her practice and any injury to her practice as a result of taking on this assignment.[9] However, in his opinion, Judge Sifton praised Ms. Hirsch's service, noting that she is "an extremely well qualified attorney with twenty five years of experience, including having clerked for an appellate judge, worked at the Legal Aid Society Criminal Appeals Bureau for 11 1/2 years, and started her own private legal practice." Porter v. United States, 2009 WL 2762818, at *10.

---

[9]While counsel provided no information about the nature of her practice in her CJA application, the Court notes that Ms. Hirsch is a solo practitioner. The fact that counsel may be a solo practitioner may help justify increasing counsel's compensation above the statutory maximum, but that factor alone does not alone justify a reimbursement of several times the statutory maximum. See Keating v. New York, 2009 WL 3401756, at *4, n.9. This is particularly true here, where counsel has not pointed to other work that she turned down in order to complete work on Porter's behalf. The fact that she took on work under the CJA is an admirable public service. However, as discussed above, compensation under the CJA was never intended to be a full substitute for the fees charged in private practice.

While Ms. Hirsch's argument that New York Forensic provided inadequate treatment appears to have been supported by at least one expert opinion, it is unclear that the entirety of Ms. Hirsch's hours spent on her own independent research and investigation in connection with the post-hearing papers and stay application were all required given the opinions of Dr. Goldsmith and Dr. Krueger. (Hirsch Decl. at 8). While her "extensive research on sex-offender treatment" surely was done in good conscience and surely helped Ms. Hirsch understand the related field, it was not so "essential to fairness" in this case as to justify exceeding the statutory cap to the extent sought by Ms. Hirsch's application.

In her July 15, 2010 Declaration, Ms. Hirsch notes as a further justification for the extensive hours spent that she "hoped that my work might have some farther-reaching consequences than in just Mr. Porter's case. . . .I hoped that my work and Dr. Krueger's evaluation might shed some light on the problems with the sex-offender treatment program provided by New York Forensic." (Hirsch Decl. ¶ 17). While Ms. Hirsch's desire to reform the system is an admirable one, it is not one intended to be compensated by the CJA Plan or that the Court can afford to finance.

Given the considerations outlined above, the Court must determine how much in excess of the statutory maximum compensation Ms. Hirsch is entitled to receive. Out of a total of 456.1 hours spent on Mr. Porter's case, Ms. Hirsch has stated that she spent 134.9 hours working on matters related to Mr. Porter's supervised release and violation thereof. (Hirsch Decl. ¶¶ 2-3). Of that time, approximately 13.8 hours were spent in court proceedings alone. At $100 per hour, the time spent in court, not including briefing or research time, approaches the maximum fee allowed by Judicial Conference regulations for violations of supervised release. Under these

16

circumstances, the Court finds that the violation proceedings were unusual and qualify as "complex" for purposes of awarding an amount that exceeds the maximum. The Court therefore finds that there has been adequate justification presented to exceed the statutory maximum of $1,700. However, because some of the time included in this voucher relates to investigative work and research that the Court believes was excessive, the Court respectfully recommends that the amount requested be reduced by one-third, and therefore recommends that $8,893.33 be granted as compensation for Ms. Hirsch's work related to Mr. Porter's supervised release hearing.

The remainder of Ms. Hirsch's time, 321.2 hours, was spent primarily on researching and writing the motion to vacate. It is much of this work that the Court finds to be outside the scope of representation contemplated by the CJA. The Court therefore recommends that Ms. Hirsch be compensated for half of this time, or $17,666.00.

Under the CJA, "fair compensation is often found to mean less than the amount requested." United States v. Blanford, 30 F. Supp. 1080, 1082 (DC. Ill. 1998). Moreover, since the maximum amount allowable is stated in the statute itself, counsel should have realized that there might be limits placed on the award and adjusted the work accordingly. Had counsel exercised the judgment to focus on only researching the necessary texts and consulting the necessary experts, she could have spent far less time on this case while still providing appropriate services.

The Court is mindful of the fact that the CJA Fund is not without limit and fees must be allocated in a manner that ensures that all defendants who are qualified to receive CJA counsel receive appropriate representation. If the Court was to award the full amount requested here on

17

fairly straight-forward litigation seeking to vacate a relatively short prison sentence, there would be fewer funds available to support the defense of another defendant who comes before this Court. Therefore, the Court respectfully recommends that Ms. Hirsch be compensated for a total of $26,559.33 in attorney's fees. In addition, the Court recommends that Ms. Hirsch be reimbursed for the full amount of costs she requested, $1,847.67, bringing her total compensation $28,407.00.

## CONCLUSION

The Court respectfully recommends that Ms. Hirsch should be awarded $28,407.00 in attorney's fees and expenses inclusive.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: Brooklyn, New York
September 15, 2010

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York